**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**

**CRIMINAL ACTION NO. 05-37-DLB**

**UNITED STATES OF AMERICA**                                                      **PLAINTIFF**

**vs.**                             **MEMORANDUM OPINION AND ORDER**

**CHANTEL MONIE**                                                                 **DEFENDANT**

**********************************

### I.      Introduction and Procedural Background

This matter is before the Court on Defendant's Motion for New Trial (Doc. # 75).

Attached to Defendant's motion is an unsigned letter, purportedly authored by Daniel Key,

which states that Defendant Monie had nothing to do with either the drug deals or the gun

(Doc. # 75-2).  Key, Monie's co-defendant and then-boyfriend, was called as a witness by

the government during the trial.  Defendant's motion is based upon allegations that Key

committed perjury during trial.

Upon review of the motion and the attached letter, the Court determined that

transcripts of the trial were necessary for proper adjudication and ordered that transcripts

of the witnesses and closing arguments be prepared and filed (Doc. # 79).  The Court also

referred the motion to Magistrate Judge Wehrman for a Report and Recommendation and

gave the parties additional time to file supplemental briefs after the transcripts were filed

(*Id.*)  Defendant thereafter supplemented her motion for new trial and the government

responded.  (Doc. # 86 & 87).  Magistrate Judge Wehrman thereafter filed his Report and

1

Recommendation (R&R) recommending that the motion for new trial be denied without any evidentiary hearing.  (Doc. # 88).

Defendant thereafter moved for reconsideration of the R&R, pointing out that the R&R included an incorrect assumption on the timing of Mr. Key's alleged recanted statement.  Because the Magistrate Judge had relied, in part, on the timing of the letter in recommending denial of the motion for new trial, the case was resubmitted for reconsideration of the motion based upon the correct date of the trial.[1]

The Magistrate Judge has now submitted his supplemental R&R (Doc. # 93) wherein he recommends that the motion be denied without an evidentiary hearing so long as the presiding trial judge concurs with the analysis therein, based in part on the undersigned judge's independent recollection of Key's credibility at trial.  Alternatively, the Magistrate Judge recommends that a ruling be stayed pending an evidentiary hearing to more closely evaluate the credibility of Key's alleged recantation  (*Id.*)  Defendant has lodged her objections to the supplemental R&R, arguing that the Court should adopt the alternative recommendation that the motion be stayed pending an evidentiary hearing (Doc. # 94). The government having failed to file any response, and the time for submitting such response have long expired, the supplemental R&R and the objections thereto, which are reviewed *de novo*, are now ripe for the Court's review.

Upon review of the supplemental R&R and the objections thereto, and the Court having carefully reviewed Mr. Key's trial testimony and compared that to the statements in

---

[1]  In his original R&R, the Magistrate Judge had assumed, based on an incorrect date set forth on the trial transcript, that Key's unsigned letter was authored before the trial when in actuality, the letter was approximately eight months after the trial.

2

the letter purportedly authored by Key, the Court is unconvinced that Key's trial testimony was false.   In fact, Key's trial testimony is replete with equivocations about Monie's involvement and/or knowledge of the drug deals and gun.   Simply put, the information in the letter is no different than Key's trial testimony.   Accordingly, Monie's motion for new trial will be denied without the need for an evidentiary hearing.

## II.   Analysis

"[A] conviction obtained by the *knowing* use of *perjured* testimony is fundamentally unfair, and must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the jury."  *United States v. Agurs*, 427 U.S. 97, 103 (1976) (emphasis added).   "To prevail on a claim that the government presented perjured testimony, [a defendant] must show '(1) that the statements were actually false; (2) the statements made were material; and (3) [the] prosecution knew they were false.' "  *United States v. Pierce*, 62 F.3d 818, 834 (6th Cir. 1995) (citation omitted).   While the knowing use of false or perjured testimony on the part of the government would entitle a defendant to a new trial, "mere inconsistencies in testimony by government witnesses do not establish knowing use of false testimony."  *United States v. Scarborough*, 43 F.3d 1021, 1026 (6th Cir. 1994); *United States v. Lochmondy*, 890 F.2d 817, 822 (6th Cir. 1989).   The defendant bears the burden of showing that the testimony was false.  *United States v. Griley*, 814 F.2d 967, 971 (4th Cir. 1987).

When a defendant relies upon the recantation of testimony by a government witness in support of a motion for new trial, the Sixth Circuit has advised district courts to view such affidavits with caution.  *See United States v. Willis*, 257 F.3d 636, 645-46 (6th Cir. 2001) (affidavits by witnesses recanting their trial testimony are to be looked upon with extreme

3

suspicion); *United States v. Chambers*, 944 F.2d 1253, 1264 (6th Cir. 1991) (recanting affidavits and witnesses are viewed with extreme suspicion)  Assuming that the letter purportedly authored by Key qualifies as a post-trial recantation, the Sixth Circuit requires two criteria be satisfied in order to grant a new trial on that basis.  First, the district court must be reasonably well satisfied that the original trial testimony given by the government witness was false, and second, without the false testimony, the jury might have reached a different conclusion.  *Willis*, 257 F.3d at 646-47 (*citing Gordon v. United States*, 178 F.2d 896, 900 (6th Cir. 1949))

In this case, Ms. Monie relies exclusively on the unsigned letter purportedly sent by Daniel Key wherein he states that Monie had no prior knowledge at all concerning the illegal drug transaction or gun he had in his possession.  In both his R&R and Supplemental R&R, Magistrate Judge Wehrman reviewed the record and concluded that  Monie had not established the requirements for obtaining a new trial pursuant to *Gordon v. United States*, 178 F.2d 896, 900 (6th Cir. 1949).  In his recommendations, Magistrate Judge Wehrman recommended that the Court conclude that Key's trial testimony was not false.  Upon the undersigned's independent review and evaluation of Key's trial testimony, the Court adopts that recommendation and finds that Ms. Monie has not satisfied her burden of establishing the requirements for a new trial.

First and foremost, the letter, made part of the record at Docket Entry No. 76, contains multiple errors which the Court finds are significant in rejecting its veracity and authenticity.  Both defense counsel and Defendant Monie's names are misspelled.  Additionally, the type-written year of 2006 contains an overwrite of 2005.  Perhaps most significantly, the letter is in sharp contrast to the unsolicited letter signed by Defendant

Monie herself (Doc. # 71-2).  In that letter, Ms. Monie indicates that she knew Key was selling illegal drugs to an acquaintance named Mitchell on 2 occasions.  Although she continues to deny any knowledge of the gun in her own letter, she admits to knowledge of the drug deals.[2]  Thus, when the letter purportedly authored by Mr. Key states unequivocally that Ms. Monie had no knowledge of the illegal drug transaction, that is in direct conflict with Ms. Monie's own admissions.  Under these circumstances, it is difficult, if not impossible, to give any credence to the averments in the unsigned letter.

In this case, the proof established that through the use of a confidential informant, two purchases of crack cocaine, one on November 9, 2004, and one on January 4, 2005, were conducted.  Ms. Monie transported Key to both drug sales.  More specifically, on the evening of November 9, 2004, Key arrived for the sale in a blue Cadillac driven by Ms. Monie, with whom Key had been romantically involved with, and in whose home he previously resided.  The evidence established that the Cadillac was registered in Ms. Monie's name.  The proof further established that at time of the November controlled buy, the informant got into the backseat of the Cadillac and purchased approximately 1.3 grams of crack cocaine from Key.  An audio tape of the controlled buy was admitted which revealed the Defendant speaking to the informant during the buy.

The second purchase occurred in essentially the same manner as the November transaction.  Key was driven to the same location by Defendant in her Cadillac.  The informant entered the vehicle and got into the back seat whereupon he purchased approximately 3.9 grams of crack cocaine.  Once again, during the audio recording of the

---

[2] This statement is consistent with the statements made by Ms. Monie after the January, 2005 buy-bust wherein she told Agent Andy Muse that she knew Key was a drug dealer.

transaction, Ms. Monie is overheard speaking to Key and the informant.   Upon the informant exiting the Cadillac, strike force agents apprehended Key.   As they were approaching Key, he was observed by agents weighing out additional crack cocaine on a digital scale which was balanced on his lap.   This occurred in the passenger seat of the vehicle a few feet from Ms. Monie.

Key was thereafter removed from the Cadillac and placed face down on the pavement by agents.   As Key was being rolled over by agents in an effort to handcuff him, a pistol fell out of the pocket of his jacket.   Key testified that he had the pistol for protection during the drug deal.   Officers also testified that drug dealers frequently carry firearms with them during deals to provide protection for themselves, their product and their cash.

The testimony also established that a couple of weeks or so before January 4, 2005, Key purchased the pistol on the street.   Key explained that he obtained the pistol because Ms. Monie had been robbed, and Key was concerned about her safety.   Consistent with Key's concern, the pistol was kept in Ms. Monie's living room closet at her residence.   Prior to the January 4, 2005, transaction, Key called Ms. Monie for another ride to the Florence McDonald's.   After arriving at Ms. Monie's house, Key removed the pistol from the living room closet.   Key testified that Ms. Monie was present when Key removed the pistol from the closet.   Key thereafter placed the pistol in his jacket pocket, and he left the house with Ms. Monie and her two year old son to proceed to the drug deal.

Upon a careful review of Key's trial testimony, including both direct and cross examination, the Court concludes that it was anything but consistent.   Depending on whom was asking the questions, Key tended to agree with the questioner.   For instance, during direct examination, Key explained that he bought the gun for Ms. Monie's protection after

6

some guys had robbed Ms. Monie at her house  (Doc. # 82 at 9-10).  Key also testified he kept the gun in a closet at Ms. Monie's house.  (*Id.* at 10)  When asked by the prosecutor if he knew if Ms. Monie had knowledge that he had the gun with him when he left for the second drug deal, Key said he thought so.  He also testified he thought Monie saw him take the gun, explaining that he had it for protection, to make sure nothing like that happened again.[3]  (Id. at 11)  However, a few minutes later during cross-examination, Key was asked by defense counsel about Monie's knowledge of the gun and testified that when he removed the gun from the closet he wasn't sure Ms. Monie saw the gun.  (*Id.* at 17-18).  Key also testified that he had no discussions about the gun.  (*Id.*)   Defense counsel persisted in emphasizing the point that Ms. Monie had no knowledge of the gun when he asked Key to verify that he had previously told the prosecutor that Monie did not know he had the gun at the time.   When asked if that was the truth, Key responded in the affirmative.  (*Id.* at 20)  Then on redirect, Key was asked if he had provided a follow-up statement during a subsequent proffer session on October 12, 2005.   During that questioning, Key acknowledged telling the agents that he believed Ms. Monie knew he had a gun with him during the second drug deal.  When asked if that was also the truth, Key once again responded in the affirmative.  (*Id.* at 22-23).

This testimony establishes that the information in the letter purportedly authored by Key is simply not a recantation.   Moreover, given the equivocal nature of Key's trial testimony, there is no basis for the Court to conclude that Key's original trial testimony was false.  The information in the letter is merely cumulative of a portion of Key's trial testimony

---

[3]  The Court believes Key was referencing the prior robbery at Monie's house with this testimony.

and does not give rise to a new trial under applicable law.  Moreover, because Key's purportedly recanting statements were part of his trial testimony, the statements in the letter are not likely to produce an acquittal.  Finally, an evidentiary hearing is not required because the statements purportedly provided by Key in the letter are cumulative and are not new.

For all of these reasons, **IT IS ORDERED AS FOLLOWS**:

1.      Magistrate Judge Wehrman's Supplemental Report and Recommendation (Doc. # 93) be, and it is, hereby **adopted** as the opinion of the Court[4];

2.      Defendant's Objections to the Supplemental R&R are **overruled**; and

3.      Defendant's Motion for New Trial (Doc. #75) be, and is hereby **denied** without the necessity of an evidentiary hearing.

This 8th day of January, 2008.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\ORDERS\CovCrim\2005\05-37 Order Denying Motion for New Trial.wpd

---

[4] Because the Supplemental R&R, which is adopted herein, addresses all issues raised in the motion for new trial, it is not necessary to specifically adopt or reject the original R&R (Doc. # 88).